IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

| | |
|---|---|
| FREDERIC BLAIR ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMAND** |
| U.S. TRAINING CENTER, INC. ) | |
| a subsidiary of XE SERVICES, LLC, ) | |
| formerly BLACKWATER, USA., and ) | |
| ACADEMI, LLC. ) | |
| ) | |
| Defendants. ) | |

**NATURE OF THE CASE**

This action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, costs and attorney's fees for violations Age Discrimination in Employment Act, as amended, Violations of the Fair Labor Standards Act, Employment ERISA, North Carolina Black Listing, libel and intentional or negligent infliction of emotional distress suffered by Plaintiff in his treatment while employed by the Defendant.

**JURISDICTION**

<u>Age Discrimination</u>

1. This action arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

2. Declaratory, injunctive, and equitable relief are sought pursuant to 29 U.S.C. § 621 *et. seq*. and the pendent state claims.

3. Compensatory and punitive damages are sought pursuant to 29 U.S.C. §§ 216 and 217 and the pendent claims.

4. Costs and attorneys' fees may be awarded pursuant to 29 U.S.C. §621 *et seq*. and Fed. R. Civ. R. 54.

5. Mr. Roberts filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 5, 2010, complaining of the acts of age discrimination alleged herein and the EEOC issued a Notice of Right to Sue on September 21, 2011. The Notice of Right to Sue was received on September 23, 2011. Attached hereto and incorporated by reference as Exhibit 1.

6. Mr. Roberts has complied fully with the administrative prerequisites of the ADEA.

### Fair Labor Standards Act

7. This action is for unpaid wages, damages, and other relief under the Fair Labor Standards Act.

8. This Court has jurisdiction of Mr. Roberts claims pursuant to 29 U.S.C. § 201, *et seq.*

### Employment Income Security Act

9. This action is also brought pursuant to 29 U.S.C. Sec. 1132 to recover benefits due a beneficiary and participant of a plan governed by ERISA, Sec. 502(a)(1)(B), 29 U.S.C. Sec. 1132(a)(1)(b), to recover benefits and enforce rights and clarify rights to future benefits provided by the Plan. Jurisdiction is conferred upon this Court pursuant to 29 U.S.C. Sec. 1132(e)(1).

10. Mr. Roberts also seeks a temporary and preliminary injunction forcing the Defendant to pay Mr. Roberts payroll taxes including FICA, FUTA, state unemployment compensation fund arrears, arrears for plan benefits for Defendants' health welfare, disability, and pension plans for the years Mr. Roberts should have received since the beginning of his employment, plus interest, fines or penalties.

11. This Court has subject matter jurisdiction over all claims based upon &.S.C. §1331 and

28 U.S.C. § 1332.

12. The Court has personal jurisdiction over the defendant on all claims based upon N.C. Gen. Stat.§ 1-75.4(1) d., in that it is engaged in substantial activity within the State of North Carolina.

### State Law Claims

13. The Court has pendant state jurisdiction Mr. Roberts' State Law Claims.

### VENUE

14. Because the defendant's principal place of business is in the Eastern District of North Carolina, venue is proper within this district.

### THE PARTIES

15. Plaintiff is a citizen and resident of the State of Florida. Plaintiff was born on December 17, 1964 and is a member of a protected class in that he is over 40 years of age.

16. At all times relevant, Plaintiff was an employee as that terms is defined by the ADEA; by ERISA 29 U.S.C. § 1002(6) and by the FLSA 29 U.S.C. § 203 (e).

17. At all times relevant the defendant was an "employer within the meaning of the ADEA, ERISA and the FLSA.                      .

18. Mr. Roberts was employed by defendant or its predecessors, from in or around May 2006 until the termination of his employment on or about June 28, 2010.

19. Defendant U.S. Training Center is an LLC organized and operating under the laws of the State of Delaware and is engaged in the business of providing security services for Department of State assignees. The name changed from Blackwater USA. to US Training Center, a subsidiary of XE Services, with its principal place of business in Moyock, North Carolina.

20. Upon information and belief Defendant ACADEMI, LLC is currently the new

owner of Defendant U.S. Training Center and XE services with its principle place of business in Moyock, North Carolina.

21. At all times relevant Defendant was an employer as that term is defined by 29 U.S.C. §203 (d).

22. Despite the fact that the Agreement between the parties designated Mr. Roberts an Independent Contractor, at all times relevant, Plaintiff was an employee of Defendant within the meaning of the ADEA, FLSA and ERISA.

## FACTS

23. Mr. Roberts entered an Agreement with the defendant in June 2006. The Agreement designated Mr. Roberts as an independent contractor. The contract provided that all withholding or other payroll taxes were the responsibility of Mr. Roberts.

24. The Defendant provided initial training at the U.S. Training Center, a facility operated and controlled by Defendant.

25. After his training at the U.S. Training Center, Mr. Roberts was deployed to Baghdad, Iraq where he and his team were assigned to a Personal Protective Service convoy used to transport Unites States Embassy Personnel throughout Iraq.

26. During his tenure with Defendant, Mr. Roberts was required to take numerous training courses, including but not limited to, Worldwide Personal Protection Service courses in 2005. He also took the Designated Defensive Marksmanship course. In January 2010, Defendant required that Mr. Roberts attend the Worldwide Personal Protection Service re-qualification Course. Defendant also required Mr. Roberts to attend Cultural Sensitivity Courses.

27. At all times relevant, Defendant controlled the manner and means by which Mr. Roberts performed the duties assigned to him by the defendant, including the time at which such

duties were performed.

28. Defendant provided job assignments to Mr. Roberts without his input and he was expected to provide specific security services as required by Defendant's clients.

29. Defendant provided Mr. Roberts with the instrumentalities of his work, including but not limited to weapons, protective gear, clothing, and vehicles.

30. Defendant provided Mr. Roberts with food and lodging and travel expenses such as hotels, and air fare. Other out of pocket expenses, such as taxis were reimbursed.

31. Defendant controlled the days and hours Mr. Roberts worked as well as any time off or vacation time. Mr. Roberts was required to sign in via an electric time-card twice a day.

32. Defendant provided a schedule for specific required activities such has monthly qualification with assigned fire arms and daily two-hour training sessions on tactics.

33. Defendant required daily and weekly meetings, briefing on assignments and status reports. Failure to attend these meetings could result in the termination of Mr. Roberts' contract.

34. Defendant required specific reports from Mr. Roberts and others similarly employed, including inventory reports, reports on weapon assignments, man-power reports and reports on vehicle maintenance.

35. Upon information and belief, other employee's of the Defendant's have requested a determination of status on IRS Form SS-8 and the IRS has found them to be employees.

36. Defendant developed policies and procedures which governed the behavior of Mr. Roberts and others similarly employed. These policies and procedures were mandatory and failure to adhere to the policies could result in the termination of their contract.

37. In early 2007, Mr. Roberts submitted a biography for a position as Shift Leader. His qualifications were approved. However, he did not receive the position. Later, he was passed

over for the position several times.

38. Mr. Roberts asked for and received a transfer to Hillah, Iraq in October 2007. While in Hillah, he continued to ask for and was refused promotion.

39. During the period from February 2007 up until the time of his termination he was subjected to remarks about his age and was told that he was "too old" for his position.

40. In January 2010, Mr. Roberts was transferred to Kabul, Afghanistan. Mr. Brad Glisson was in his direct chain of command. In addition to Mr. Glisson making comments referencing Mr. Roberts age, Mr. Glisson gave him several negative reviews within a mere few weeks. The reviews were unwarranted, and contained false information.

41. In the late spring of 2019, while Mr. Glisson was on leave, Mr. Roberts submitted his biography for a position as Deputy Project Manager.

42. On or about June 27, 2010, when Mr. Glisson returned from leave, Mr. Roberts spoke to him and once again asked about the potential for promotion. Mr. Glisson told him that he was "too old" for the Shift Leader position and that Mr. Roberts' age would prohibit the team from having any respect for him and he would have no credibility with the team. Mr. Roberts indicated that Mr. Glisson was also over forty. Ms. Glisson answered by saying that he was in an administrative position and "not running the roads with a team to be responsible for."

43. On or about June 27, 2010, Mr. Roberts told Mr. Glisson that he would report what he believed to be discrimination to the home office when he was next on leave as he was preparing to return to the States in ten days.

44. The following day, June 28, 2010, Mr. Glisson terminated Mr. Roberts employment.

45. Mr. Roberts was provide less than an hour to gather his belongs in order to board a plane to take him back to the United States.

46. Upon his return to the United States, Mr. Roberts sought but was unable to find new employment.

47. Mr. Roberts submitted his candidacy for appointment to the Foreign Service. Based upon the Defendant's false information regarding the reasons for Mr. Roberts' termination, he was denied a position with the Foreign Service.

48. Mr. Roberts filed a Charge of Discrimination on September 1, 2010

49. Mr. Roberts Right to Sue Letter was mailed on September 21, 2011.

50. During the entire course of Plaintiff's employment by defendant, Mr. Roberts employment performance was exemplary. Mr. Roberts received numerous awards and other recognition for his professionalism both from Blackwater/US Training Center as well as from the Department of State.

51. The aforementioned acts and conduct by defendant, its agents and employees were intentional, willful, wanton, and malicious.

## COUNT I

## VIOLATION OF THE ADEA

52. Mr. Roberts incorporates as if realleged Paragraphs 1 through 51.

53. By restricting Mr. Roberts' promotional opportunities on account of his age and his opposition to age discrimination, Defendant has violated 29 U.S.C. §621 *et seq*.

54. The effect of the practices complained of in the paragraphs above has been to deprive Mr. Roberts of equal employment opportunities and otherwise adversely affect his employment status because of his age.

55. The unlawful employment practices complained of in the paragraphs above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## COUNT II

## FLSA

56. Mr. Roberts incorporates as if realleged Paragraphs 1 through 55.

57. Mr. Roberts was not paid for all time worked. Instead, he was paid a per diem rate.

58. Mr. Roberts was not an exempt employee within the meaning of FLSA.

59. Mr. Roberts was often required to work for more than 40 hours per week.

60. Defendant did not pay Mr. Roberts one and one-half time for hours worked in excess of 40 hours per week.

## COUNT III

## ERISA

61. Mr. Roberts incorporates as if realleged Paragraphs 1 through 60.

62. Upon information and belief, Defendant has welfare and benefit plans within the meaning of 29 U.S.C. ' 1132(a).

63. Upon information and belief, In addition to its welfare and benefit plans, Defendant had various other benefits for its employees.

64. Defendant has refused to provide Mr. Roberts benefits afforded its other employees. Such refusal is wrongful and entitles Plaintiff to enforce the provisions and recover the benefits due to him, pursuant to 29 U.S.C. Sec. 1132, *et seq*.

65. Defendant is indebted to Mr. Roberts for benefits due under the terms of such benefit and welfare plans, from the date of his employment until the date of his discharge. with interest accruing at the legal rate from the date Defendant became so indebted, together with costs, interest and attorney's fees.

66. Defendant has refused to provide Plaintiff benefits afforded its other employees. Such refusal is wrongful and entitles Plaintiff to enforce the provisions and recover the benefits due her pursuant to 29 U.S.C. Sec. 1132, *et seq*.

67. Any employee benefit plan existing owed Mr. Roberts a fiduciary duty within the meaning of 29 U.S.C. §1104 and 1109. Failure to include in or inform Mr. Roberts of his rights under such plan is a breach of such fiduciary duty.

68. As a direct and proximate cause of such breach of fiduciary duty, Mr. Roberts has suffered and continues to suffer loss and is entitled to recover such losses as are due him.

## COUNT IV

## BLACKLISTING

69. Mr. Roberts incorporates as if realleged Paragraphs 1 through 68.

70. The defendant unlawfully prevented Mr. Roberts from obtaining new employment.

71. Mr. Roberts was the employee of the defendant and discharged him from its service.

72. Upon information and belief, without solicitation, the defendant contacted prospective employers and provided untruthful statements regarding the reason for Mr. Roberts termination.

73. As a direct and proximate cause of the Defendant's Mr. Roberts suffers and continues to suffer damages and has been unable to find employment.

## CLAIM V

## LIBEL PER SE

74. Mr. Roberts incorporates as if realleged Paragraphs 1 through 73.

75. The defendant published false written statements about Mr. Roberts to the Department of State.

76. The time such statements were published the defendant knew or should have known that

such statements were false and disparaged Mr. Roberts in his professional reputation.

77. The statements were published either negligently or with actual malice toward Mr. Roberts.

78. The statement exposed Mr. Roberts to ridicule, contempt, lowered him in the esteem of his peers, caused him to be shunned and inured him in his business or trade.

79. As a direct and proximate result of the actions of the defendant, Mr. Roberts suffered and continued to suffer damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Roberts prays the Court that:

1. Mr. Roberts recover judgment against the defendant for ERISA employment benefits dating from the date of his employment until its termination plus, interest accruing from the date said payments became due and payable but go unpaid.

2. Mr. Roberts recover compensatory, damages and an equal amount of liquidated damages as provided in 29 U.S.C. § 216(b).

3. The Court grant a judgment requiring the defendant to pay Mr. Roberts appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Mr. Roberts, whose wages are being unlawfully withheld as a result of the discriminatory actions of the defendant, based upon his age.

4. Award Mr. Roberts compensatory and punitive damages in an amount to be determined at the trial of this matter.

5. That the Court order the defendant to pay to Mr. Roberts reasonable attorney fees, costs and expenses;

6. That the costs of this action be taxed to the defendant; and

7. That Mr. Roberts recover any further relief the Court deems just and appropriate.

This the 20th day of December 2011.

        **MEYER LAW OFFICES, P.A.**

        BY: <u>/s/ Deborah N. Meyer</u>
        Deborah N. Meyer
        N.C. State Bar No.: 19186
        401 Harrison Oaks Blvd., Suite 321
        Cary, North Carolina 27513
        Telephone: (919) 678-8200
        Facsimile. (919) 678-8280
        Dmeyer@meyerlawnc.com
        Attorney for Intervener-Plaintiff

## CERTIFICATE OF SERVICE

The undersigned attorney for Plaintiff-Intervener hereby certifies that on this date she served the Complaint upon Defendant's registered agent in this action by depositing a copy thereof in the United States mail, postage prepaid, and addressed as follows:
This 20th day of December 2011.

U.S. Training Center, Inc. a subsidiary of
XE Services, LLC, formerly BLACKWATER, USA
Registered Agent: Katherine F. McKenzie
850 Puddin Ridge Road
Moyock, NC 27958

ACADEMI, LLC
Registered Agent: Katherine F. McKenzie
850 Puddin Ridge Road
Moyock, NC 27958

**MEYER LAW OFFICES, P.A.**
By /s/ Deborah N Meyer
Deborah N. Meyer
North Carolina State Bar No.:
19186 401 Harrison Oaks Blvd.,
Suite 321 Cary, North Carolina
27513 Telephone: (919) 678-8200
Facsimile. (919) 678-8280
Dmeyer@meyerlawnc.com
Attorney for Plaintiff-Intervener